UNITED STATES DISTRICT COURT SOUTHERN
DISTRICT OF NEW YORK

VALDO VAHER,

                          Plaintiff,

        - against -

TOWN OF ORANGETOWN, NEW YORK, TOWN
OF ORANGETOWN POLICE DEPARTMENT,
KEVIN NULTY, JAMES NAWOICHYK, THOMAS
HOFFMAN, "JOHN" SULLIVAN, and JOHN DOES
1-10, their identities not currently known, jointly,
severally and individually,

                          Defendants.

**OPINION AND ORDER**

10 Civ. 1606 (ER)

Appearances:

Alan Edward Wolin
Wolin & Wolin
Jericho, NY
*Attorney for Plaintiff*

John J. Walsh, II
Paul Edward Svensson
Hodges, Walsh & Slater, L.L.P.
White Plains, NY
*Attorneys for Defendants*

Ramos, D.J.:

        Defendants Town of Orangetown, New York (the "Town"), Town of Orangetown Police

Department ("OPD"), Kevin Nulty, James Nawoichyk, Thomas Hoffman and "John" Sullivan

("Defendants") bring this Motion to Dismiss Plaintiff's Amended Complaint in its entirety

pursuant to Fed. R. Civ. P. 12(b)(6).[1]  Doc. 33.  Also before the Court is Plaintiff's Motion to

---

[1] While Defendants seek dismissal of the Amended Complaint ostensibly in its entirety, Defendants failed to address
certain significant aspects of the Amended Complaint.  Specifically, Defendants did not assert any arguments
requesting dismissal of:  (1) Plaintiff's Fifth Amendment claims; (2) Plaintiff's substantive due process claims; (3)

Compel Defendants to identify the individual sued herein as "John" Sullivan[2] and to produce the last known addresses for Defendants Hoffman, and Nawoichyk.  Doc. 28.   For the reasons set forth below, Plaintiff's Motion is DENIED in full and Defendants' Motion is GRANTED in part and DENIED in part.

## I. Background

Plaintiff Valdo Vaher commenced this action against Defendants on March 1, 2010, alleging seven causes of action under the First, Second, Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983.  Doc. 1.  On October 26, 2010, Plaintiff filed an Amended Complaint which asserts the same seven causes of action

---

any of the claims against the John Doe defendants; (4) any of the claims against the OPD; or (5) any of the claims against the Individual Defendants in their individual capacities.  Accordingly, with the exception of Plaintiff's Fifth Amendment claims, the claims against the OPD, and the individual capacity claims that are relevant to the Court's 4(m) analysis, the Court has not considered the sufficiency of the claims that Defendants have not addressed in their motion to dismiss.

Despite Defendants' failure to address the Fifth Amendment claims anywhere in their motion papers, the Court concludes that such claims must be dismissed because the Fifth Amendment only applies to claims against the federal government.  *See Malay v. City of Syracuse*, 638 F. Supp. 2d 303, 312 n. 2 (N.D.N.Y. 2009) (explaining that where, as here, the only defendants are municipal entities and officials, all Fifth Amendment claims must be dismissed (citing *Sylla v. City of New York*, No. 04 Civ. 5692 (ILG), 2005 WL 3336460, at *2 (E.D.N.Y. Dec. 8, 2005))).  The Court also concludes that the claims against the OPD must be dismissed because the police department is an arm of the municipality without a distinct legal identity, and thus it is not a suable entity.  *In re Dayton*, 786 F. Supp. 2d 809, 818-19 (S.D.N.Y. 2011) (collecting cases).

Further, apart from the arguments regarding the viability of Plaintiff's First Amendment retaliation and Fourteenth Amendment liberty interest claims against Sullivan, and the discussion of the *Monell* claim against the Town, the parties treat each cause of action in the Amended Complaint as collectively asserting a claim against all Defendants as a group.  Therefore, the Court will also treat the various causes of action as collectively asserting such claims against all Defendants without distinction.  *Velez v. Levy*, 401 F.3d 75, 85 n.8 (2d Cir. 2005).

Finally, the Court notes that while the Notice of Motion indicates that Defendants are moving to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(5) and 12(b)(6), Doc. 33, Defendants did not assert any arguments relating to Rule 12(b)(5) in their motion papers.

[2] For the sake of clarity, the Court has referred to this defendant as Sullivan throughout this opinion, notwithstanding Defendants' undisputed representations that the Town had no record of anyone named Sullivan being involved in any of the incidents described in the Amended Complaint. *See, e.g.*, Decl. of Alan E. Wolin ("Wolin Decl."), Doc. 29, Ex. A, at 8, Doc. 29-1; *see also* Mot. Permit Late Serv. Ex. G, Doc. 13-9.

against the same Defendants for the same constitutional violations as are alleged in the original Complaint.  Doc. 10. ("Am. Compl.").  Plaintiff seeks compensatory and punitive damages as well as an order compelling Defendants to return all property that was confiscated from him as a result of the March 2007 Search described below.

### A.  Factual Background

The following facts have been taken from the allegations in the Amended Complaint, which the Court accepts as true for purposes of this motion.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

At all times relevant to the Amended Complaint, Defendants James Nawoichyk ("Nawoichyk"), Thomas Hoffman ("Hoffman") and "John" Sullivan ("Sullivan") were employed by the Town as officers of the OPD.  Am. Compl. ¶¶ 10-12.  Defendant Kevin Nulty ("Nulty") was employed by the Town as the Police Chief for the OPD.  *Id.* ¶ 9.  Plaintiff has resided in the Town since 1974.  *Id.* ¶ 17.  At all times relevant to the allegations set forth in the Amended Complaint, he lived at 254 Betsy Ross Drive, Orangeburg, New York, located within the Town of Orangetown (the "residence"), and was a police officer employed by the United States Department of Veterans Affairs.  *Id.* ¶¶ 17-18.[3]  Plaintiff was also the holder of various valid firearms licenses and firearms collectors' licenses.  *Id.* ¶ 21.  Pursuant to said licenses, Plaintiff collected military firearms and ammunition, and maintained a shop at the residence for the repair and reconditioning of military firearms.  *Id.* ¶ 22.

Plaintiff asserts that, during the years prior to 2007, he was regularly the target of harassment and intimidation by Town officials and members of the OPD.  *Id.* ¶ 24.  While Plaintiff does not describe any incidents that occurred prior to 2007, said incidents are alleged to

---

[3] While the Amended Complaint states that the residence is located within the "Town of Orangeburg," Am. Compl. ¶ 17, this appears to be a typographical error.

be part of an ongoing pattern and practice of harassment and intimidation by Defendants, which constituted the official policy and custom of the Town.  *Id.* ¶¶ 16, 24.

Beginning in 1999, Plaintiff was a member of the New York Army National Guard's 442nd Military Police Company.  *Id.* ¶ 19.  Defendant Nawoichyk was also a member of the 442nd Military Police Company.  *Id.* ¶ 20.  At an unspecified time and for unspecified reasons, Nawoichyk became suspicious about Plaintiff's background and began to ask personal questions about what Plaintiff had done in Estonia, where he had been deployed as a member of the United States Army.  *Id.* ¶¶ 19, 20.   Plaintiff would not answer Nawoichyk's questions, because the information was classified.  *Id.* ¶ 20.  As a result, Nawoichyk became enraged and would thereafter threaten Plaintiff in an intimidating fashion.  *Id.*

On March 8, 2007, a locksmith who had been called to the residence by Plaintiff's mother (who lived with Plaintiff) observed old military rifles and ammunition cases in Plaintiff's garage and subsequently reported his observations to the OPD.  *Id.* ¶¶ 23, 25-28.  The following day, Nawoichyk and Hoffman arrived at the residence and questioned Plaintiff's mother about his firearms.  *Id.* ¶ 29.  Nawoichyk and Hoffman also "severely pressured" Plaintiff's mother to permit them to enter the residence without a warrant.  *Id.* ¶ 30.  Plaintiff was not at the residence when Nawoichyk and Hoffman arrived; however, his mother told Nawoichyk and Hoffman that Plaintiff had valid licenses for "all firearms and related accessories."[4]  *Id.* ¶¶ 29-30.

Plaintiff's mother told him about her interaction with Nawoichyk and Hoffman on the evening of March 8, 2007.  *Id.* ¶ 31.  Plaintiff then called Nawoichyk who told him that OPD had received a complaint about guns and ammunition in Plaintiff's garage.  *Id.* ¶ 32.  In response,

---

[4] In opposing Defendants' motion to dismiss, Plaintiff asserts that Nawoichyk and Hoffman "obviously looked for illegal weapons" at the residence on March 8, 2007, Pl.'s Mem. Law Opp. Defs.' Mot. Dismiss ("Pl.'s Mem.") 8, Doc. 37; however, the Amended Complaint does not contain any factual allegations relating to a search on that date. *See* Am. Compl. ¶¶ 29-30.

Plaintiff told Nawoichyk that he held that appropriate licenses for all of his firearms and that he was a police officer with the U.S. Department of Veteran Affairs. *Id.* Nawoichyk tried to intimidate and pressure Plaintiff into permitting him to return to the residence, but Plaintiff refused, and Nawoichyk responded in a threatening fashion by saying:  "If I feel something is in there I will break your door down." *Id.* ¶ 33.

On March 19, 2007, Plaintiff went to the OPD to show Defendants his licenses and his police and military identifications in an effort to end any further investigation into his lawfully owned firearms; however, Nawoichyk was not satisfied with the information Plaintiff provided. *Id.* ¶ 34.  Accordingly, on March 26, 2007, Nawoichyk, Hoffman and other, unidentified OPD employees, members of the Rockland County Sheriffs' Department and agents of the United States Bureau of Alcohol, Tobacco & Firearms Enforcement ("ATFE") executed a search warrant at the residence that had been issued by the Justice Court of the Town of Orangetown at the request of Defendants.[5]  *Id.* ¶¶ 35-36.  The search warrant authorized Defendants to search for and seize "a large capacity ammunition feeding device that consists of ammunition, linked together by belt and links that it [sic] can be readily restored and converted to accept more than ten rounds of ammunition." *Id.* ¶ 35.

In executing the warrant, Defendants and other law enforcement officials searched Plaintiff's property "in an abusive and disrespectful manner," damaging his property, and rummaging through his personal belongings for several hours.  *Id.* ¶¶ 40-46.  For example, one member of the OPD, identified as Police Officer Sila, "menaced" Plaintiff by starting to draw his firearm; an unidentified ATFE agent threatened to handcuff Plaintiff and his mother, causing members of the Rockland County Sheriffs' Department to laugh; and Nawoichyk and Hoffman

---

[5] Defendants Sullivan and Nulty are not alleged to have participated in executing the search warrant.

made ridiculing and sarcastic statements to Plaintiff.  *Id.* ¶¶ 41, 42, 46.  During the search,

Plaintiff complained to an unidentified detective supervisor that Nawoichyk and Hoffman were

harassing him, but the supervisor ignored his complaint.  *Id.* ¶ 38.  Plaintiff also attempted to

contact Nulty twice on the day of the search, but Nulty did not return his telephone calls.  *Id.* ¶

39.

At the conclusion of the search, Defendants seized certain property, including property

that Plaintiff asserts was not covered by the search warrant.  *Id.* ¶¶ 42-43.  Defendants then left

the residence without providing Plaintiff with any receipt or inventory of the items taken.  *Id.* ¶

47.  Plaintiff did subsequently receive an inventory of the property that was seized; however, the

inventory did not include certain items that were seized, including a 20" barrel length AR15 rifle

kit and a green military ammunition box with hinges.  *Id.* ¶ 43.  Plaintiff was never arrested and

the seized property, which was lawfully owned, has never been returned.  *Id.* ¶ 48.  Plaintiff

alleges that Defendants failed to provide him with notice or an opportunity to seek the return of

the seized property, "nor have they provided [him] with any process whatsoever."  *Id.* ¶ 49.

Defendants, including Nawoichyk, told various third parties, including officials of the

442nd Military Police Company and supervisors at the Department of Veterans Affairs, about the

facts and circumstances surrounding the search.  *Id.* ¶ 50.  Nawoichyk told such third parties that

he thought Plaintiff was a "foreign spy," and that Plaintiff's property had been turned over to

Homeland Security and would never be returned.  *Id.* ¶ 51.  As a result of Defendants' statements

to third parties, Plaintiff "has been stigmatized and his reputation diminished."  *Id.* ¶ 52.

Approximately ten months later, on January 28, 2008, Plaintiff filed a Notice of Claim relating to

the events of March 26, 2007 (the "March 2007 Search").  *Id.* ¶ 53.

Approximately one year later, Plaintiff had another encounter with members of the OPD (the "2009 Incident") that is alleged to be part of the same ongoing pattern of harassment and intimidation. *Id.* ¶¶ 54-61. On March 3, 2009, Plaintiff called the OPD to request their assistance in resolving an altercation between himself and the son of a contractor whom Plaintiff had hired to perform certain work. *Id.* ¶¶ 54-56. The altercation related to Plaintiff's refusal to pay the contractor until certain deficiencies were addressed. *Id.* During the altercation, the contractor's son became enraged, threatened Plaintiff with violence, and swung a large piece of wood near Plaintiff's head while cursing at Plaintiff. *Id.* ¶ 55. In order to protect himself and because he felt threatened, Plaintiff displayed his firearm. *Id.* The contractor's son subsequently swung a steel tile cutter near Plaintiff's head and ignored Plaintiff's repeated requests to leave his property. *Id.* ¶¶ 55-56. The OPD was "dilatory" in responding to Plaintiff's call and he called 911 a second time. *Id.* ¶ 57.

When defendant Sullivan and Police Officer Fitzgibbons finally arrived at the residence, rather than complying with protocol by first speaking to Plaintiff, as the complainant, the officers initially spoke to the contractor and did not allow Plaintiff the opportunity to explain his version of the events. *Id.* ¶¶ 57-58. Sullivan also told Plaintiff several times, in a threatening and intimidating manner, that if Plaintiff did not pay the contractor, Sullivan would arrest Plaintiff and ensure that he lost his home and his job. *Id.* ¶ 58. Plaintiff was thus forced to pay the contractor under duress. *Id.* ¶ 59. Sullivan then prepared a complaint, in which he "falsely accused" Plaintiff of menacing and indicated that the contractor's son was the complainant and that Plaintiff was the perpetrator.[6] *Id.* ¶¶ 58, 60. Defendants subsequently contacted Plaintiff's

---

[6] While the Court is not required to determine whether Plaintiff's actions constituted menacing in order to resolve the instant motion, it notes that under New York law, "[a] person is guilty of menacing in the second degree when . . . he or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol,

employer, the U.S. Department of Veterans Affairs, to report the 2009 Incident. *Id.* ¶ 61. As a result, Plaintiff was placed on modified duty and ordered to undergo psychological testing. *Id.* Plaintiff passed all of the tests and was eventually restored to full duty status. *Id.* In furtherance of the ongoing pattern and practice of harassing Plaintiff, several nights after the 2009 Incident, a number of police cars from OPD drove to the rear of the residence and shined their spotlights on Plaintiff's house. *Id.* ¶ 62.

The alleged pattern and practice of harassing Plaintiff continued approximately one year later. On March 11, 2010, in the vicinity of the intersection of Blaisedell Road and Orangeburg Road in the Town of Orangetown, Plaintiff was pulled over after making a right hand turn, and "for no reason, a uniformed officer approached plaintiff's vehicle from the passenger side with his gun drawn and pointed at plaintiff," and then repeated that action after retreating to his car, before ultimately allowing Plaintiff to leave. *Id.* ¶ 63.

On the basis of the foregoing incidents, Plaintiff asserts three causes of action for violations of his Fourth, Second and First Amendment rights (Plaintiff's First, Second and Third Claims for Relief, respectively), *id.* ¶¶ 65-81, and four causes of action for violations of his rights under the Fifth and Fourteenth Amendments (Plaintiff's Fourth, Fifth, Sixth and Seventh Claims for Relief). *Id.* ¶¶ 82-105.

**B. Procedural History**

On March 1, 2010, Plaintiff commenced this action by filing a Verified Complaint. Doc. 1. On May 4, 2010, in preparation for an initial pre-trial conference that was to be held before the Honorable Richard J. Sullivan, to whom this case was originally assigned, defense counsel

---

revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 120.14(1); *see also People v. Perry*, 967 N.E.2d 1195, 1197 (N.Y. 2012) ("Frightening a man with a gun is not a justified 'emergency measure' for ending a tussle, or a fistfight," though "[i]t would be justified in defense of one's own life. . . .").

first raised the issue of inadequate service with respect to all Defendants in an email exchange with Plaintiff's counsel.  *See* Doc. 18 ("Sept. 2011 Order") at 2.  On May 11, 2010, this case was reassigned to the Honorable Kenneth M. Karas.  On July 20, 2010, Plaintiff's counsel submitted a letter to Judge Karas requesting a conference to address the issue of service.  *See* Doc. 7.  A pre-motion conference was held on September 13, 2010, after which Judge Karas entered an order granting Plaintiff leave to file an Amended Complaint and to file a Motion to Permit Late Service, since the 120-day period for service under Rule 4(m) had expired on June 29, 2010.[7] Doc. 8.  The Amended Complaint was filed on October 26, 2010, Doc. 10, and the Motion to Permit Late Service was filed on November 2, 2010.  Doc. 13.

On September 23, 2011, Judge Karas granted Plaintiff's request for an extension of time to serve the Amended Complaint, despite finding no good cause for the failure to timely serve the original Verified Complaint, because:  (1) the three-year statute of limitations for § 1983 actions would bar re-filing of some of Plaintiff's claims; (2) Defendants had actual notice of the claims against them; and (3) Defendants would not be prejudiced by an extension of time to permit service.  Sept. 2011 Order 4-5, 7-10.  Judge Karas granted Plaintiff an additional thirty days to serve the Amended Complaint on all Defendants.  *Id.* at 11.

On October 5, 2011, Plaintiff's counsel served defense counsel with a Demand for Addresses requesting the last known home and/or business addresses for Nawoichyk, Hoffman and Sullivan.  Wolin Decl. Ex. B, Doc. 29-2; *see* Doc. 19.  In a response the following day, October 6, 2011, defense counsel informed Plaintiff's counsel that he did not have addresses for Nawoichyk and Hoffman and that there was no record of any "Sullivan" being employed by the

---

[7] A full discussion of the service deficiencies addressed in the *first* Motion to Permit Late Service, and Plaintiff's arguments in support of his first request for an extension, are set forth in Judge Karas' Order of September 23, 2011 (the "September 2011 Order").  *See* Sept. 2011 Order 2-3, 4-9.

OPD or involved in the incidents described in the Amended Complaint.[8]  Wolin Decl. Ex. A, at

8.  Defense counsel also stated that Hoffman and Nawoichyk were no longer employed by the

OPD, *id.* at 6, a fact that defense counsel had previously made known to Plaintiff's counsel in

July 2010.  *See* Sept. 2011 Order 2-3; *see also* Mot. Permit Late Serv. Ex. G.  Plaintiff repeated

his request that Defendants respond to the Demand for Addresses in two email messages to

defense counsel on October 7, 2011.  Wolin Decl. Ex. A, at 5-7.

After defense counsel told Plaintiff's counsel to make his own effort to locate the

unserved Defendants, Plaintiff's counsel conducted an internet search for Nawoichyk on the

whitepages.com website and discovered a possible address for Nawoichyk in the Town.  *Id.* at 2.

On October 10, 2011, Plaintiff served a copy of the Amended Complaint and Summons on the

address believed to be the residence of Nawoichyk.  *See* Doc. 23.  The following day, October

11, 2011, Plaintiff's counsel again asked defense counsel to confirm that the address he located

for Nawoichyk was accurate, and defense counsel responded on the same day by telling

Plaintiff's counsel, again, that he did not have Nawoichyk's home address.  Wolin Decl. Ex. A,

at 2, 4.  Plaintiff effected service on the Town, OPD, and Nulty by serving copies of the

Amended Complaint on the Deputy Town Clerk on October 11, 2011, within the additional 30-

day period granted by Judge Karas.  *See* Docs. 20-22.

On October 19, 2011, four days before the expiration of the extended deadline for

service, Plaintiff submitted a letter to Judge Karas requesting an additional extension of time to

complete service on Hoffman and Sullivan, as well as an order directing Defendants to produce

the last known home address for Hoffman and the proper name for the defendant misidentified as

Sullivan.  Doc. 19.  On October 20, 2011, Judge Karas granted Plaintiff's request for an

---

[8] The Court notes that defense counsel first raised the misidentification issue with Plaintiff's counsel in an email communication on July 27, 2010.  *See* Mot. Permit Late Serv. Ex. G, at 2; *see also* Sept. 2011 Order 2-3.

extension of time to serve the remaining defendants by an additional thirty days, and directed Defendants to respond to Plaintiff's request for the additional information. *Id.* at 2.

On October 25, 2011, Defendants submitted a letter to Judge Karas objecting to the request for the last known home addresses of the former police officers, and noting that Plaintiff's counsel had been aware of the service issues since May 4, 2010 and that the three year statute of limitations for the claims against Hoffman and Nawoichyk had already expired. Doc. 24. Defense counsel's letter also indicated that Nawoichyk had not been properly served with the Amended Complaint. Doc. 24 at 1-2. Defense counsel concluded by noting that Plaintiff's counsel had not offered any explanation for the delay in serving the Demand for Addresses on defense counsel or for seeking the Court's assistance with the outstanding service issues. Doc. 24 at 2.

Judge Karas directed Plaintiff to respond to Defendants' letter by October 31, 2011. Doc. 24. The docket sheet does not reflect any such letter being received by Judge Karas,[9] and neither party contacted the Court at any point after October 25, 2011 regarding the outstanding service issues or Plaintiff's request for an order compelling Defendants to produce information required for service.[10] There is also no indication that Plaintiff attempted to serve Nawoichyk at any other addresses, or that he made any effort to complete service on Hoffman or Sullivan prior to the expiration of the twice-extended service deadline of November 23, 2011.

---

[9] While it has since become clear that Plaintiff's counsel did submit a letter to Judge Karas on October 31, 2011, the letter was apparently misplaced and neither party sought to contact the Court at any point during the following four months notwithstanding the complete lack of activity in this case. *See* Wolin Decl. Ex. A.

[10] The Court also notes that the time for the Town, OPD and Nulty to respond to the Amended Complaint expired on October 31, 2011, *see* Docs. 20-22; however, Defendants did not file any Answer or request an extension of time to do so because they were under the mistaken impression that their time to respond had been extended perpetually until Plaintiff properly served the Amended Complaint on all Defendants based on the Scheduling Order of September 14, 2010, which stayed their deadline to respond to the Amended Complaint until Judge Karas resolved Plaintiff's *first* Motion to Permit Late Service, *see* Doc. 8, which he did in the September 2011 Order. Doc. 18.

This case was reassigned to the undersigned on January 23, 2012, Doc. 26, and a Notice of Court Conference was issued on February 4, 2012.  Doc. 27.  Neither party contacted the Court regarding any of the outstanding issues noted above prior to the conference.  At the status conference that was held on February 21, 2012, Plaintiff again requested an order compelling Defendants to produce the information that was requested in the October 19, 2011 letter to Judge Karas and defense counsel responded with the same objections.  Notwithstanding the parties' failure to move this case forward, the Court entered an order permitting Plaintiff to file yet another motion for an extension of time to serve the remaining Defendants, as well as a motion to compel Defendants to provide the information necessary to complete service.  *See* Minute Entry dated Feb. 21, 2012.  The Court also granted Defendants leave to file a motion to dismiss. *Id.*  Both motions were fully submitted on March 26, 2012.

## II. Plaintiff's Motion for an Extension of Time for Service and Motion to Compel

Plaintiff again asks the Court for an order (1) compelling the Town, OPD and Nulty—the three Defendants who have been served with the Amended Complaint—to provide him with the correct name of the officer misidentified in the Amended Complaint as "John" Sullivan and the last known addresses for defendants Nawoichyk, Hoffman, and Sullivan (the "unserved Defendants"), and (2) granting him an additional extension of time to complete service on the unserved Defendants.  Pl.'s Mem. Supp. Mot. Compel ("Pl's Mem. Compel.") 1, Doc. 30. Plaintiff argues that he is entitled to the name and addresses under FRCP 33, because the unserved Defendants are "witnesses to events described in the Amended Verified Complaint and may have knowledge concerning those events."  Pl.'s Mem. Compel at 4.  The Court is constrained to point out, however, that Plaintiff's motion papers do not contain *any* arguments in support of the request for an extension.

12

At the February 21, 2012 status conference, Plaintiff was granted leave to file a motion for a *third* extension of time to complete service, and for an order compelling Defendants to produce the requested information *for the purpose of completing service*—in other words, if Plaintiff is not permitted additional time to effect proper service on the unserved Defendants, then his request for an order compelling Defendants to provide the information he requires for service is either moot or premature.  Apart from criticizing Defendants' refusal to provide the information, Plaintiff's four-and-a-half page memorandum of law is devoid of any arguments or citations to legal authorities to support the extension request.  Despite Plaintiff's failure to address the extension request, the Court will first consider whether an additional extension of time to serve is appropriate under Rule 4(m).

### A.  Discussion

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure the court shall extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay."  *DeLuca v. AccessIT Group*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010).  "Good cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control."  *Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 56 (E.D.N.Y. 2006) (quoting *E. Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999)) (internal quotation marks omitted).  "Therefore, [a]n attorney's inadvertence, neglect, mistake or misplaced reliance does

not constitute good cause." *Id.* (alteration in original) (quoting *E. Refractories Co.*, 187 F.R.D. at 505) (internal quotation marks omitted).

Here, Plaintiff did not even attempt to demonstrate good cause for the failure to serve the Amended Complaint in his opening memorandum.  In his Reply Memorandum, in response to various arguments set forth by Defendants regarding Plaintiff's lack of diligence, Plaintiff argues that:  (1) he did what he thought was "prudent" to resolve the service issue, (2) he "did attempt to obtain the addresses," (3) if he had made a FOIA request—as Defendants had proposed— "[s]urely . . . that request would have been ignored by the Town based upon its track record in this matter," and (4) "Defendants, by ignoring [Plaintiff's various] requests [for the identity and addresses of the unserved Defendants], have impeded plaintiff's right to discovery."  Pl.'s Mem. Law Reply Mot. Compel ("Pl.'s Reply Mem. Compel.") 1, Doc. 36.  None of these assertions demonstrate good cause.

First, the plain language of Rule 4 makes clear that all defendants must be personally served within the 120-day period and it is undisputed that Plaintiff *still* has not served Nawoichyk, Hoffman or Sullivan.[11]  Plaintiff's second argument is belied by the statement of facts set forth in his motion papers, which demonstrate an utter lack of reasonableness and diligence on the part of Plaintiff's counsel with respect to identifying or locating the unserved Defendants despite the notice he repeatedly received from defense counsel regarding the service

---

[11] Indeed, there is no record of Plaintiff using *any* method to serve Hoffman or Sullivan at any point during the two-year period since the Amended Complaint was filed, or of Plaintiff making *any* effort to even locate or identify the unserved Defendants after receiving a second extension of time to serve from Judge Karas.

While the Court recognizes that Plaintiff did make an effort to locate and serve Nawoichyk after Judge Karas granted his *first* request for an extension of time to serve, "that fact is counterbalanced by the fact that the effort was unsuccessful, and that plaintiff here, while represented by counsel, made no further effort to serve [Nawoichyk or the other] individual defendants or to ascertain their status in this case," even after Judge Karas granted Plaintiff's *second* request for an extension of time to complete service on the unserved Defendants.  *Carl v. City of Yonkers*, No. 04 Civ. 7031 (SCR), 2008 WL 5272722, at *7 (S.D.N.Y. Dec. 18, 2008) (Lynch, J.), *aff'd* 348 F. App'x 599 (2d Cir. 2009).

deficiencies.  *See* Doc. 24; *see also Kurzberg v. Ashcroft*, 619 F.3d 176, 185 (2d Cir. 2010)

(holding that "notification to the plaintiff by the defendant, rather than by the court, of a defect in

the service of process is sufficient to start the clock on the reasonable amount of time afforded to

the plaintiff to cure the defect.").  Furthermore, Plaintiff's counsel failed to seek a further

extension of time to complete service until four months after the expiration of the twice-extended

deadline in November 2011, and *two years* after he initiated this action, and only then because

Defendants raised the service deficiencies once again during the status conference before this

Court.  As Defendants note, Plaintiff has blatantly and continually failed to pursue any of the

many possible methods of discovering the information that he has now been demanding for more

than a year.  Defs.' Reply Mem. Law Opp. Mot. Compel ("Defs.' Opp.") 7-8, Doc. 32; *see also*

Doc. 24.

       The third argument set forth in Plaintiff's Reply is based on nothing more than mere

conjecture, and his fourth argument fails because it was the responsibility of his attorney—and

not the Court or Defendants—to ensure that all Defendants were properly served with the

Amended Complaint in a timely manner.  *Zapata v. City of New York*, 502 F.3d 192, 199 (2d Cir.

2007) (describing plaintiff's attorney's poor communication with client and "assum[ption] that

the City would gratuitously supply the information necessary to effect service which she could

not (or would not) obtain from her client," as "a confession of neglect, not an excuse for it."); *see*

*also Beauvoir*, 234 F.R.D. at 57 (noting that it is "counsel's responsibility to monitor [the service

of process] and to take reasonable steps to assure that a defendant is timely served." (quoting

*McKibben v. Credit Lyonnais*, No. 98 Civ. 3358 (LAP), 1999 WL 604883, at *4 (S.D.N.Y. Aug.

10, 1999))) (internal quotation marks omitted).

A finding that Plaintiff lacked good cause for his failure to timely serve the Amended

Complaint is not, however, fatal to his request.  *Zapata*, 502 F.3d at 197 ("[A] district court *may*

grant an extension in the absence of good cause, but it is not required to do so.").  Where a

plaintiff has not shown good cause for his failure to effect service within the 120 day-period

provided by Rule 4(m), the decision of whether to grant an extension, and the criteria for that

decision, are left to the sound discretion of the district court.  *Id.* at 197-98.  "Where, as here,

good cause is lacking, but the dismissal without prejudice in combination with the statute of

limitations would result in a dismissal *with* prejudice . . . the district court [should] weigh[] the

impact that a dismissal or extension would have on the parties."  *Id.* at 197.

In determining whether a discretionary extension is appropriate in the absence of good

cause, courts in this Circuit generally consider four factors:  "(1) whether any applicable statutes

of limitations would bar the action once re-filed; (2) whether the defendant[s] had actual notice

of the claims asserted in the complaint; (3) whether defendant[s] attempted to conceal the defect

in service; and (4) whether defendant[s] would be prejudiced by extending plaintiff's time for

service."  *DeLuca*, 695 F. Supp. 2d at 66 (collecting cases).

With respect to the first factor, courts often consider the fact that the statute of limitations

has run on a claim as favoring the plaintiff.  *De La Rosa v. N.Y. City 33 Precinct*, No. 07 Civ.

7577 (PKC) (KNF), 2010 WL 1737108, at *7 (S.D.N.Y. Apr. 27, 2010).  Since neither party

addressed the question of whether the statute of limitations has run on Plaintiff's claims (apart

from unsupported, conclusory assertions),[12] the Court will assume for purposes of this motion

_____

[12] Defendants assert that the claims against the unserved Defendants must be dismissed because the statute of
limitations has expired, without citing to any legal authorities or distinguishing between the claims that arise out of
events in 2007 and those that arise out of the later events.  Defs.' Opp. 9-10.  Defendants also fail to reference the
relevance of the prior proceedings before Judge Karas, which arguably may have had the effect of tolling the statute
of limitations for some period of time.

that at least some of Plaintiff's claims would be barred by the three-year statute of limitations that applies to § 1983 claims in New York. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).

　　With respect to the second factor, while there is no competent evidence to support a conclusion that any of the unserved Defendants had actual notice of the claims against them, defense counsel filed a Notice of Appearance on behalf of all Defendants and has engaged in motion practice on their behalf.  Therefore, the Court will also assume that the second factor favors Plaintiff.  *See Schweitzer ex rel. Schweitzer v. Crofton*, No. 08 Civ. 135 (DRH) (ETB), 2010 WL 3516161, at *10 (E.D.N.Y. Sept. 1, 2010) (presuming that individual defendant employed by county had actual notice of claims where county attorney had filed a notice of appearance on his behalf shortly after the complaint was filed); *see also Cantone & Co. v. Seafrigo*, No. 07 Civ. 6602 (PKL), 2010 WL 1488014, at *5 (S.D.N.Y. Apr. 12, 2010) (concluding that defendant had actual notice of claims in the complaint based on prior motion practice).

　　Nonetheless, it is clear that the third factor weighs against Plaintiff, since Defendants have repeatedly raised the service deficiencies since the very outset of this litigation and Plaintiff *still* has not attempted reasonable efforts to cure them.  Finally, with respect to the fourth factor, extending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on defendants, especially where, as here, both the service period and the statute of limitations period have long since expired.  *Zapata*, 502 F.3d at 197-98; *see also Carl*, 2008 WL 5272722, at *6 (same).  While this prejudice is lessened if the defendants had actual notice of the plaintiff's claims, *see Zapata*, 502 F.3d at 198-99, the delay in this case was unusually lengthy and unreasonably prolonged by Plaintiff's lack of diligence.

Thus, the Court finds that two factors favor Plaintiff and two factors favor Defendants. However, the Second Circuit has stated clearly that even if the balance of hardships favors the plaintiff a district court may still decline to excuse a failure to timely serve the summons and complaint where the plaintiff fails to advance some colorable excuse for neglect. *Zapata*, 502 F.3d at 198 & n.7 (citing *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 509 (2d Cir. 2006)).  This is such a case.

Here, much like the plaintiffs in *Zapata, Harper* and *Carl*, Plaintiff has not only failed to even attempt to show good cause for his failure to serve the Amended Complaint on the unserved Defendants, he has also offered no explanation whatsoever for his neglect—even one falling short of good cause.  *Zapata*, 502 F.3d at 199 (upholding district court's refusal to extend time to serve where the statute of limitations had expired, even though plaintiff had properly served defendant four days after expiration of the initial service period and 84 days after the expiration of the original limitations period); *Bogle-Assegai*, 470 F.3d at 509 (upholding dismissal of individual capacity claims against unserved defendants where plaintiff offered no excuse for the defective service and never attempted to remedy the defects by asking the court to extend her time to effect personal service during the two-year period after she was informed of the improper service); *see also Harper v. City of New York*, No. 09 Civ. 5571 (JG) (SMG), 2010 WL 4788016, at *9-10 (E.D.N.Y. Nov. 17, 2010), *aff'd*, 424 F. App'x 36 (2d Cir. 2011); *Carl*, 2008 WL 5272722, at *6.

Moreover, here, unlike in *Zapata, Bogle-Assegai*, *Carl*, and *Harper*, these deficiencies all post-date Plaintiff's *first* Motion to Permit Late Service.  "And most egregiously, unlike the plaintiff in *Zapata*, who ultimately served the defendants only four days beyond the service deadline, plaintiff here [has] *never* effected proper service on the defendants . . . ."  *Carl*, 2008

18

WL 5272722, at *7.  Moreover, there is no record of Plaintiff even *attempting* to serve Hoffman or Sullivan, or to identify Sullivan, at any point during the two-year period since the Amended Complaint was filed.  Ultimately, here, as in *Zapata* and *Carl*, "no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Zapata*, 502 F.3d at 198; *Carl*, 2008 WL 5272722, at *7.

Therefore, Plaintiff's request for a third extension of time to serve Hoffman, Nawoichyk and Sullivan is DENIED.

## B.  Motion to Compel Production of Information

While the denial of Plaintiff's request for an extension of time to complete service renders Plaintiff's request for the production of information moot to the extent it is premised on the need to complete service, the Court notes that the Motion to Compel would fail even if an extension had been granted, because Fed. R. Civ. P. 33 does not authorize Plaintiff to serve any interrogatories at this stage in the proceedings.[13]

Accordingly, Plaintiff's Motion to Compel Defendants to provide the desired information is DENIED without prejudice to renewal during the course of discovery, to the extent such information is properly sought under the Federal Rules of Civil Procedure.

## C.  Claims against the Unserved Defendants

In accordance with the Court's denial of Plaintiff's request for an extension of time to serve the unserved Defendants, all claims against Hoffman, Nawoichyk, and Sullivan are hereby DISMISSED.[14]

---

[13] Pursuant to Fed. R. Civ. P. 26(d), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosures under Rule 26(a)(1)(B), or when authorized . . . by court order."

[14] As with the arguments set forth in Defendants' motion to dismiss, *see supra* note 1, Defendants did not distinguish between the individual capacity claims and the official capacity claims in opposing Plaintiff's Motion to Compel,

### III. Rule 12(b)(6) Motions to Dismiss

#### A. General Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Famous Horse Inc.,* 624 F.3d at 108. However, the court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly,* 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 570; *Iqbal,* 556 U.S. at 680.

However, the question on a Rule 12(b)(6) motion "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"

---

either in terms of the adequacy of service or with respect to the assertion that the claims against the unserved Defendants must be dismissed. However, in this instance only, the Court has distinguished between the two types of claims against the unserved Defendants, because of the distinct requirements for serving individuals for each type of claim. *See, e.g., Lange v. Town of Monroe,* 213 F. Supp. 2d 411, 420-21 (S.D.N.Y. 2002). In light of the dismissal of the individual capacity claims against the unserved Defendants pursuant to Rule 4(m), the Court has also dismissed the official capacity claims against the unserved Defendants, because they are duplicative of the municipal capacity claims against the Town. *See Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (explaining that official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978))).

*Sikhs for Justice v. Nath*, No. 10 Civ. 2940 (RWS), --- F. Supp. 2d ----, 2012 WL 4328329, at

*15 (S.D.N.Y. Sept. 21, 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278

(2d Cir. 1995)).  "[T]the purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a

streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief

without resolving a contest regarding its substantive merits,'" and without regard for the weight

of the evidence that might be offered in support of Plaintiff's claims.[15]  *Halebian v. Berv,* 644

F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458

F.3d 150, 155 (2d Cir. 2006)).

## B.  Extrinsic Materials

Accordingly, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court

generally must confine itself to the four corners of the complaint and look only to the allegations

contained therein.  *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007).  The Court, however,

may consider a document that is attached to the complaint, incorporated by reference or integral

to the complaint,[16] provided there is no dispute regarding its authenticity, accuracy or relevance.

*DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).  Courts

may also properly consider statements set forth in documents of which judicial notice may be

---

[15] It is for this reason that Defendants' attempt to criticize Plaintiff for failing to submit evidence of the firearm licenses that are referenced in the pleadings is entirely meritless.  Defs.' Reply Mem. Law Further Supp. Mot. Dismiss ("Defs.' Reply Mem.") 4, Doc. 38.

[16] Limited quotations or references to a document in a complaint are insufficient to deem an entire document incorporated into the complaint, *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67-68 (2d Cir. 2008) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); however, a court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.  *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153-54 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  In order for the contents of a document to be deemed *integral* to the complaint, they must be deemed necessary to the plaintiff's statement of a claim under Rule 8.  *See, e.g., Sahu*, 548 F.3d at 68 (concluding that documents quoted in complaint were not "integral" because they were not required to state a claim and thus were "best viewed as tending to establishing that the complaint's factual assertions are 'plausible,' and therefore sufficient to survive a motion to dismiss under Rule 12(b)(6)." (citing *Twombly*, 550 U.S. at 557-58)) (internal citation omitted).

taken, but again only where the plaintiff *relied on* the contents of the document in drafting the

complaint, *Chambers*, 282 F.3d at 153 (quoting *Int'l Audiotext Network, Inc.*, 62 F.3d at 72), and

solely to establish the existence of the opinions or assertions contained therein, rather than for the

truth of the matters asserted. *Global Network Commc'ns, Inc.*, 458 F.3d at 157 (quoting *Int'l

Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

Where other extrinsic materials are submitted to the Court for consideration in connection

with a 12(b)(6) motion, the additional materials must either be excluded, or the motion must be

converted to one for summary judgment under Fed. R. Civ. P. 56 after affording the parties the

opportunity to conduct appropriate discovery and submit additional supporting materials. Fed.

R. Civ. P. 12(d); *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (explaining that "the

conversion requirement is strictly enforced whenever there is a 'legitimate possibility' that the

district court relied on material outside the complaint in ruling on [a Rule 12(b)(6)] motion."

(quoting *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999))); *see also id.* at 84 ("Vacatur is

required even where the court's ruling simply 'mak[es] a connection not established by the

complaint alone' or contains an 'unexplained reference' that 'raises the possibility that it

improperly relied on matters outside the pleading in granting the defendant's Rule 12(b)

motion.'" (quoting *Fonte v. Bd. of Managers of Continental Towers Condo.*, 848 F.2d 24, 25 (2d

Cir. 1988))) (alteration in original).

Here, the only document attached to the Amended Complaint is the inventory of the

items seized from the residence. Am. Compl. Ex. 1. However, in support of their motion to

dismiss, Defendants attach a number of exhibits to their memorandum of law, which are nowhere

properly identified or authenticated.[17]  Docs. 35-2–35-10.  Defendants also do not offer any legal

authority for why it would be appropriate for the Court to consider these documents.  Moreover,

with the exception of a document that appears to be the search warrant for the March 2007

Search, Doc. 35-5,[18] none of the documents attached as exhibits to Defendants' Memorandum of

Law are even *mentioned* in the Amended Complaint.   In addition to being unidentified and

unauthenticated, the remaining exhibits would also be inappropriate for the Court to consider on

a number of grounds.[19]  Accordingly, none of the documents proffered by Defendants will be

considered.

---

[17] Although defense counsel filed an affirmation in support of Defendants' motion to dismiss, stating that he is "familiar with this matter from [his] review of the files maintained by [his] office," the affirmation does not identify *any* of the documents that are attached to the memorandum of law.  Doc. 34.

[18] The Court declines to analyze whether the search warrant could be deemed integral to or incorporated in the Amended Complaint, since the only portion relevant to the instant motions is quoted in the Amended Complaint. *See* Am. Compl. ¶ 35.

[19] First, the Court will not consider the document titled "Affidavit in Support of Search Warrant," Docs. 35-8–35-10, which the Court has presumed is the document quoted in Defendants' Reply Memorandum (because Defendants failed to identify the source of the quotation in their motion papers), Defs.' Reply Mem. 5, because:  (1) Plaintiff had no prior notice, possession or knowledge of the contents of the affidavit, Pl.'s Mem. 8; (2) Plaintiff disputes the accuracy of the representations contained in the affidavit; (3) the affidavit appears to conflict with the allegations in the Amended Complaint, *see e.g.*, Am. Compl. ¶ 48; and (4) Defendants seek to have the Court rely on the statements contained in the affidavit for the truth of the matters asserted therein.  *Global Network Commc'ns, Inc.*, 458 F.3d at 157-58 (holding that district court erred by relying on external materials that *controverted* factual allegations in the complaint, even though such materials were public records); *see also Friedl*, 210 F.3d at 84 (vacating ruling because district court relied on a matter outside the pleadings to dismiss the plaintiff's claim).

With respect to Exhibit D to Defendants' Memorandum of Law, which is titled "Return Order Pursuant to CPL § 690.05," and was executed by Town Justice Paul B. Phinney, III on March 27, 2007, Doc. 35-7, even if the court could theoretically take judicial notice of this document as a public record, the document has not been authenticated by Defendants, it is not integral to the Amended Complaint, Plaintiff did not rely on the terms or effect of the document in drafting the Amended Complaint, and the document cannot be considered to controvert the allegations in the Amended Complaint.  *Global Network Commc'ns, Inc.*, 458 F.3d at 156-57.

Further, with respect to Exhibit C to Defendants' Memorandum of Law, Doc. 35-6, which appears to be the Notice of Claim filed by Plaintiff in 2008 regarding the March 2007 Search, the single reference to the Notice of Claim in the Amended Complaint is clearly insufficient to render this document integral to the Amended Complaint, especially given its questionable relevance to the issues presented by Defendants' 12(b)(6) motion.  *See Global Network Commc'ns, Inc.*, 438 F.3d at 156 ("[T]he complaint's reference to [plaintiff's] guilty pleas [in an unrelated criminal proceeding] cannot open the door to the content of his testimony proffered in exchange for the pleas, as the

## IV. Section 1983 Claims

Plaintiff brings his various constitutional claims pursuant to 42 U.S.C. § 1983.  In order to state a claim under § 1983, a plaintiff must allege that:  (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action, and (2) the action deprived plaintiff of a right secured by the Constitution or federal law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law.  *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)).  Plaintiff alleges that all of the Individual Defendants were acting "under color of law and pursuant to their authority as public officers" at all times relevant to the allegations in the Amended Complaint, Am. Compl. ¶ 14, and Defendants do not address the state actor requirement for a § 1983 claim anywhere in their motion papers.[20]

## V. Fourth Amendment Claim

Plaintiff alleges that the March 2007 Search and the resulting seizure violated his rights under the Fourth Amendment.[21]

---

nexus between the two is too attenuated to render that testimony integral to the complaint."); *see also DiFolco*, 622 F.3d at 111 (noting additional requirement of undisputed relevance).

[20] The Court notes that, apart from a single reference to § 1983 in the discussion of Plaintiff's procedural due process claims, Defs.' Mem. Law & Stmt. Facts ("Defs.' Mem.") 15, Doc. 35, and the single reference in first sentence of their *Monell* argument, *id.* at 16; Defs.' Reply Mem. 11, Defendants' motion papers do not contain any discussion of 42 U.S.C. § 1983, despite the fact that every single claim asserted in the Amended Complaint is made pursuant to section 1983.  Presumably, the scant attention given to the first threshold requirement for stating a § 1983 claim in Defendants' motion papers is due to the fact that Defendants don't dispute that the actions complained of were performed under "color of state law."

[21] Plaintiff's Fourth Amendment claim is set forth in his First Claim for Relief.  Am. Compl. ¶¶ 65-69.

A. **Legal Standard**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The Supreme Court has explained that "[t]he text of the Amendment thus expressly imposes two requirements.  First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity."  *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011) (citing *Payton v. New York*, 445 U.S. 573, 584 (1980)); *see also Horton v. California*, 496 U.S. 128, 133 (1990) (explaining that "[t]he right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures," because "[a] search compromises the individual interest in privacy; [whereas] a seizure deprives the individual of dominion over his or her person or property." (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984))).

A search is presumptively reasonable when executed pursuant to a warrant.  *Bowen v. Cnty. of Westchester*, 706 F. Supp. 2d 475, 486 (S.D.N.Y. 2010).  However, even when a search is conducted pursuant to a valid search warrant, police officers must still execute the warrant in good faith and within the confines of the limitations contained in the search warrant.  *See Walter v. United States,* 447 U.S. 649, 656 (1980) (plurality opinion) ("When an official search is properly authorized—whether by consent or by the issuance of a valid warrant—the scope of the search is limited by the terms of its authorization."); *see also United States v. Shi Yan Liu,* 239

F.3d 138, 140-41 (2d Cir. 2000) (explaining that "a search that greatly exceeds the bounds of a warrant and is not conducted in good faith is essentially indistinguishable from a general search," which the Fourth Amendment's particularity requirement was designed to prohibit).

Further, the Fourth Amendment does not authorize the seizure of items other than those identified in or reasonably covered by the terms of the search warrant, unless it is "immediately apparent" that such items are contraband or illegal on their face.  *Horton*, 496 U.S. at 135-37 (citations omitted).  "Seizures of property during a search conducted pursuant to a warrant are limited to (1) the items named in the warrant, (2) any fruits, instrumentalities, or evidence of a crime that are discovered in the course of a search of legitimate scope, and (3) certain kinds of property for which a special reason for seizure, such as officers' safety or safekeeping of cash, can be shown."  *Dale v. Bartels*, 732 F.2d 278, 284 (2d Cir. 1984); *see also Rackley v. City of New York*, 186 F. Supp. 2d 466, 473 (S.D.N.Y. 2002) (explaining that the Fourth Amendment is designed to prevent the seizure of one item under a warrant that describes a different item (citing *Marron v. United States*, 274 U.S. 192, 196 (1927))).

## B.  Discussion

Here, Plaintiff does not challenge the validity of the warrant; rather, he alleges that Defendants violated his Fourth Amendment rights by the unreasonable and disrespectful manner in which they conducted the search, and by the seizure of items that were outside the scope of the search warrant, including a rifle kit and ammunition box.[22]  Am. Compl. ¶¶ 40-46.

---

[22] While Plaintiff asserts that "[t]he inventory contains seized material which was not a subject of the search warrant," Am. Compl. ¶ 43, he does not identify which of the ten items on the inventory he believes are outside the scope of the warrant, and the Court was not able to determine which items Plaintiff intended to reference.  Based on the descriptions of the items seized, it appears that all of the confiscated ammunition would be covered by the terms of the search warrant; however, since Plaintiff's Fourth Amendment claim will proceed on other grounds, Plaintiff will have the opportunity to demonstrate otherwise following discovery.

Defendants argue that Plaintiff's Fourth Amendment claim fails because the March 2007 Search was conducted pursuant to a judicial search warrant, the validity of which is not contested, and which is, in any event, presumptively reasonable.[23]  Defs.' Mem. 9; Defs.' Reply Mem. 4-5.  Defendants further argue that there is no Fourth Amendment violation because Plaintiff concedes that he owned military firearms and ammunition, the presence of which had been reported to the OPD by a third-party civilian.  Defs.' Mem. 9; Defs.' Reply Mem. 4.

However, Defendants do not address Plaintiff's assertions regarding the disrespectful manner in which the search was conducted.  *See* Am. Compl. ¶¶ 40-47.  More importantly, they do not offer any arguments in response to Plaintiff's assertion that Defendants improperly seized the rifle kit and ammunition box that were outside the scope of the warrant.  *Id.* ¶ 43.  While there may be various arguments to justify Defendants' seizure of those two items, either under a reasonable interpretation of the language of the search warrant itself or under an exception to the warrant requirement, Defendants have offered none.  Defendants' failure to respond to Plaintiff's assertion that the warrant was improperly executed is fatal to their motion to dismiss Plaintiff's Fourth Amendment claim.[24]  *Horton*, 496 U.S. at 133-34.

---

[23] The Court has not considered Defendants' alternative arguments that Plaintiff's Fourth Amendment claim should be dismissed because the warrant was sought by the Rockland County District Attorney and merely implemented by the OPD, Defs.' Mem. 10; Defs.' Reply Mem. 5, because those facts are not set forth in the Amended Complaint. *See supra* note 19.

[24] Because the Court concludes that Plaintiff has stated a valid Fourth Amendment claim based on the seizure of the rifle kit and ammunition box, it is not necessary to decide at this stage whether Plaintiff's allegations regarding the disrespectful manner in which the search was conducted, if proved, would be sufficient to state a Fourth Amendment violation. *See, e.g.*, *Horton*, 496 U.S. at 140 n.10 ("The manifest purpose of th[e] particularity requirement was to prevent . . . . wide-ranging exploratory searches."); *see also Shi Yan Liu*, 239 F.3d at 140 (noting that "so-called general searches" have also been described as "indiscriminate rummagings.") (internal citations and quotation marks omitted).

C.  **Qualified Immunity**[25]

Defendants' only other argument for dismissal of Plaintiff's Fourth Amendment claim is that the Individual Defendants are entitled to qualified immunity under the Supreme Court's decision in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Although Defendants present this argument as one that applies to the Individual Defendants collectively, it is clear that their arguments only relate to Defendants Hoffman and Nawoichyk, the only two Individual Defendants alleged to have participated in the execution of the warrant.  Defs.' Mem. 9-10; Defs.' Reply Mem. 4-5.  Since Hoffman and Nawoichyk have already been dismissed from the case under Rule 4(m), this argument is moot.  Defendants' motion papers do not contain any arguments that would support a qualified immunity defense for Nulty, the only individual defendant who remains in the case.

Therefore, Defendants' motion to dismiss Plaintiff's Fourth Amendment claim is DENIED, but without prejudice to Defendants' ability to reassert a qualified immunity defense on behalf of Nulty at a later stage of the proceedings.  *Velez*, 401 F.3d at 101.

**VI. Second Amendment Claim**

Plaintiff also alleges a violation of his Second Amendment right to bear arms based on the March 2007 seizure of his lawfully possessed ammunition and rifle kit.[26]  Am. Compl. ¶ 71; Pl.'s Mem. 16.

---

[25] The Court notes that Defendants only offer arguments in support of a qualified immunity defense in relation to Plaintiff's Fourth Amendment claim, notwithstanding the general assertion in the conclusion of their motion papers that the motion to dismiss should be granted with respect to the Individual Defendants on the basis of qualified immunity.  Defs.' Mem. 18; Defs.' Reply Mem. 12.  Since Defendants did not ask the Court to consider a qualified immunity defense with respect to any of Plaintiff's other constitutional claims, the Court has not done so.

[26] Plaintiff's Second Amendment claim is set forth in his Second Claim for Relief.  Am. Compl. ¶¶ 70-74.

### A.  Legal Standard

The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment "codified a *pre-existing* right" that includes an "individual right to possess and carry weapons in case of confrontation."  554 U.S. 570, 592 (2008).  In *McDonald v. Chicago*, the Supreme Court held for the first time that the Second Amendment's protections apply fully to the states through the Due Process Clause of the Fourteenth Amendment.  130 S. Ct. 3020, 3026, 3050 (2010).  However, the Second Amendment is not unlimited, and does not protect a right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626; *see also id.* at 625, 627 (explaining that it "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns," because of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" (citing *United States v. Miller*, 307 U.S. 174, 179 (1939))).

### B.  Discussion

Although Defendants' arguments are far from clear,[27] their first argument appears to rely on the contention that Plaintiff's Second Amendment rights were not violated because the ammunition that was confiscated as a result of the March 2007 Search was not lawfully possessed by him.  Defs.' Mem. 13.  However, this suggestion directly contradicts the allegations

---

[27] Inexplicably, both Defendants and Plaintiff cite to *United States v. Williams*, 553 U.S. 285 (2008), as authority for the right protected by the Second Amendment.  Defs.' Mem. 13; Pl.'s Mem. 16; Defs.' Reply Mem. 8.  In *Williams*, the Supreme Court held that the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today (PROTECT) Act provision criminalizing the pandering or solicitation of child pornography is not overbroad under the First Amendment or impermissibly vague under the Due Process Clause.  553 U.S. at 297-99, 305-06.  The Second Amendment is nowhere mentioned in the *Williams* opinion.  The only other case law cited by Defendants is the *Heller* decision, which they blatantly misconstrue as explained above.

in the Amended Complaint and thus may not be considered on a Rule 12(b)(6) motion.

Defendants' second argument is that Plaintiff's Second Amendment rights were not violated

during the 2009 Incident because the Second Amendment does not protect the right to bear arms

"for the purpose of confrontation."  Defs.' Mem. 13.  This argument is incorrect as a matter of

law under the clear language of *Heller*.[28]  *Compare* Defs.' Mem. 13 ("a person has no right to

bear arms for the purpose of confrontation" (citing *Heller* generally)) *with Heller*, 554 U.S. at

592, 628-30, 635 (explaining that the Second Amendment protects the individual right to carry

weapons "in case of confrontation," especially for the "core lawful purpose of self-defense" in

the home).

While the Second Amendment claim is not vulnerable to either of Defendants'

arguments, it is deficient, and clearly so, on other grounds.  The case law that exists relating to

the type of Second Amendment violation asserted by Plaintiff,[29] indicates that "the 'right to bear

arms' is not a right to hold some particular gun."  *Garcha v. City of Beacon*, 351 F. Supp. 2d

213, 217 (S.D.N.Y. 2005) (dismissing Second Amendment claim based on destruction of gun

seized incident to an arrest where the plaintiff had not alleged that "any action taken by

defendants would prevent him from acquiring another weapon"); *see also McGuire v. Vill. of

Tarrytown*, No. 08 Civ. 2049 (KTD), 2011 WL 2623466, at *7 (S.D.N.Y. June 22, 2011)

(relying on the holding in *Garcha* to dismiss Second Amendment claim based on seizure of

handgun pursuant to a temporary order of protection); *Walters v. Wolf*, 660 F.3d 307, 317-18

(8th Cir. 2011) (affirming district court's dismissal of Second Amendment claim based on

---

[28] In addition to being wrong as a matter of law, Defendants' second argument is also rendered irrelevant by Plaintiff's assertion that his Second Amendment claim is not based on the 2009 Incident.  *See* Pl.'s Mem. 16.

[29] The Court notes that Plaintiff does not cite to *any* cases in support of his Second Amendment claim except for the completely inapposite *Williams* case discussed in the prior footnote.  Pl.'s Mem. 16.

defendants' failure to return handgun and ammunition seized incident to arrest and held subsequent to dismissal of criminal charges against plaintiff because defendants' conduct only affected "*one* of [plaintiff's] firearms," and "defendants did not prohibit [plaintiff] from retaining or acquiring other firearms").

Here, there is no allegation that Defendants' actions have affected Plaintiff's ability to retain or acquire other firearms or ammunition, and no law has been cited that infringes on Plaintiff's right to obtain other firearms.  Accordingly, the conduct alleged in the Amended Complaint does not amount to a Second Amendment violation.  Therefore, Defendants' motion to dismiss Plaintiff's Second Amendment claim is GRANTED.

## VII. First Amendment Retaliation

Plaintiff alleges that the conduct described in the Amended Complaint was retaliation for Plaintiff filing the Notice of Claim in January 2008 and for his other complaints against the police department and various police officers in violation of his rights under the First Amendment.[30]  Am. Compl. ¶¶ 76-78; Pl.'s Mem. 13-14.  Other than the Notice of Claim, the only actual complaint alleged in the Amended Complaint is the one that Plaintiff made to the unidentified supervisor during the course of the March 2007 Search.[31]  Am. Compl. ¶ 38.  Plaintiff alleges that as a result of his protected activity, he was subjected to harassment and other retaliation by defendants, *id.* ¶ 78, and that he has experienced and continues to experience emotional injuries, "damage to his profession," and economic and pecuniary loss.  *Id.* ¶¶ 52, 61, 80.

---

[30] Plaintiff's First Amendment claim is set forth in his Third Claim for Relief.  Am. Compl. ¶¶ 75-81.

[31] The Court notes that Plaintiff also attempted to contact Nulty about the March 2007 Search without success, but there is no indication that Plaintiff left messages for Nulty complaining about the March 2007 Search.  Am. Compl. ¶ 39; *see also* Pl.'s Mem. 4 ("plaintiff attempted to object to the conduct of these detectives by contacting defendant Nulty . . . [but] Nulty refused to speak to plaintiff and never returned his telephone calls.").

Defendants' sole argument for dismissal of Plaintiff's First Amendment claim is based on Plaintiff's failure to allege this his speech was "actually chilled" as a result of Defendants' conduct.  Defs.' Mem. 11-12; Defs.' Reply Mem. 6-7.

### A. Legal Standard

In the Second Circuit, the viability of a prima facie First Amendment retaliation claim depends on the factual circumstances giving rise to the claim.  *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011); *see also Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) ("We have described the elements of a First Amendment retaliation claim in several ways, depending on the factual context.") (citations omitted).  "Private citizens alleging retaliation for their criticism of public officials" are generally required to show that "they engaged in protected speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in 'actual chilling' of their exercise of their constitutional right to free speech."  *Zherka*, 634 F.3d at 643.  However, in other private citizen cases, various forms of concrete harm have been substituted for the "actual chilling" requirement.  *Id.* at 643, 645.

### B. Discussion

Here, Defendants' challenge to the First Amendment Claim is based solely on Plaintiff's failure to allege "actual chilling" of his speech, and they cite to *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001), in support of their argument.  Defs.' Mem. 12.  In his opposition papers, Plaintiff does not directly respond to Defendants' argument, but instead cites to *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994), which does not require an allegation of "actual chilling," but rather simply requires Plaintiff to demonstrate that:  (1) he

engaged in activity protected by the First Amendment, and (2) Defendants' conduct was

motivated or substantially caused by his exercise of free speech.[32]  Pl.'s Mem. 14.

Plaintiff's position is consistent with Second Circuit authority explaining that the cases

where a plaintiff was required to allege actual chilling in order to survive a motion to dismiss all

derive from a Supreme Court case in which the *only* harm alleged was the First Amendment

injury.  *Gill v. Pidlypchak*, 389 F.3d 379, 382 n.4 (2d Cir. 2004) (citing *Laird v. Tatum*, 408 U.S.

1, 13-14 (1972)); *see also, e.g.*, *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239

(E.D.N.Y. 2009) ("Chilling is required to be alleged only in cases where a plaintiff states no

harm independent of the chilling of speech.").[33]  Thus, while a plaintiff asserting a First

Amendment retaliation claim "must allege some sort of harm," it is not necessary for that harm

to be a chilling of speech in every case.  *Gill*, 389 F.3d at 382-83; *see also Zherka*, 643 F.3d at

643, 645 (same).  For example, in *Tomlins v. Village of Wappinger Falls Zoning Board of

Appeals*, the Court found a First Amendment retaliation claim adequately alleged despite the

absence of any allegation of actual chilling, where the plaintiff claimed a retaliatory denial of a

---

[32] Although Defendants don't challenge the other elements of Plaintiff's First Amendment claim, the Court notes that Plaintiff's filing of the Notice of Claim and his other complaint about members of the OPD constitute well-established forms of protected activity under the First Amendment.  *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91 (2d Cir. 2002).  With respect to the motivation prong of the claim, the Second Circuit has explained that that "[t]he ultimate question of retaliation involves a defendant's motive and intent, both difficult to plead with specificity in a complaint," and thus "[i]t is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred."  *Id.* at 91 (citing *Gagliardi*, 18 F.3d at 195); *see also Puckett*, 631 F. Supp. 2d at 240-41 ("This question is not one that can be decided in the context of a motion to dismiss." (citing *Gagliardi*, 18 F.3d at 195)).  In the absence of any cognizable challenge from Defendants, the allegations in the Amended Complaint adequately allege a retaliatory intent to survive the instant motion to dismiss.

[33] Although the Second Circuit did not hold that a plaintiff is required to allege some other concrete harm in order to adequately allege a First Amendment retaliation claim in *Gagliardi*, subsequent Second Circuit opinions have interpreted *Gagliardi* as requiring such an injury to be alleged in lieu of the allegation of chilling.  *See, e.g.*, *Gill*, 389 F.3d at 383 (explaining that the *Gagliardi* plaintiffs' retaliation claim apparently survived a motion to dismiss because they adequately pleaded non-speech injuries, such as noise pollution); *see also Zherka*, 634 F.3d at 644 (explaining that there is an injury requirement to state a claim under § 1983 and that "[v]arious forms of harm have been accepted as satisfying this injury requirement in the context of a claim that a public official has injured the plaintiff in retaliation for [his] exercise of [his] First Amendment rights.").

building permit and a denial of an unconditional variance, among other unspecified harms.  812

F. Supp. 2d 357, 371 n.17 (S.D.N.Y. 2011); *see also, e.g.*, *Puckett*, 631 F.3d at 240-41 (finding

First Amendment retaliation claim adequately pled where plaintiff alleged harm to the value of

her property as a result of defendants' retaliatory conduct).

Here, Plaintiff has alleged various injuries resulting from Defendants' retaliatory conduct,

including harm to his professional reputation, temporary modification of his job responsibilities,

further harassment and intimidation by Defendants and economic and pecuniary loss.  Am.

Compl. ¶¶ 52, 61, 80.  Therefore, Plaintiff was not required to allege actual chilling in order to

adequately plead a First Amendment retaliation claim.

Accordingly, Defendants' motion to dismiss Plaintiff's First Amendment claim is

DENIED.

## VIII. Fourteenth Amendment Due Process Liberty Interest Claim

Plaintiff has also asserted a Fourteenth Amendment Due Process Liberty Interest claim,

which is based entirely on the following statement:

> By engaging in the complained of actions, defendants and their
> agents, acting under color of law and their authority as public
> officers, intentionally and recklessly deprived plaintiff of his
> liberty interest without due process of law in violation of the Fifth
> and Fourteenth Amendments to the Constitution of the United
> States.

Am. Compl. ¶ 91.[34]  Plaintiff asserts that the Fourteenth Amendment liberty claim refers to a

violation of his First Amendment right to free speech.  Pl.'s Mem. 15.  Defendants argue that if

the Fourteenth Amendment liberty claim is based on a violation of Plaintiff's First Amendment

claim, the cause of action should fail because the stand-alone First Amendment claim (Plaintiff's

---

[34] Plaintiff's due process liberty interest claim is set forth in his Fifth Claim for Relief.  Am. Compl. ¶¶ 90-94.

Third Claim for Relief) fails.  Defs.' Mem. 12; Defs.' Reply Mem. 15.  The parties' submissions are devoid of *any* citations to legal authorities regarding the type of Fourteenth Amendment liberty interest claim asserted by Plaintiff in this case.

**Discussion**

It is well-established that the "liberty" protected by the Fourteenth Amendment is "not confined to mere freedom from bodily restraint."  *Bd. of Regents v. Roth,* 408 U.S. 564, 572 & n.11 (1972) (quoting *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)) (internal quotation marks omitted).  In *Roth*, the Supreme Court explained that, while it

> has not attempted to define with exactness the liberty . . . guaranteed (by the Fourteenth Amendment),  the term has received much consideration and some of the included things have been definitely stated.  Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience,  and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men.

*Id.* at 572 (alterations in original) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)) (internal quotation marks omitted).  This broad concept of liberty includes the right to free speech, though the right remains subject to reasonable government regulation.  *See Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 707-08 (1931) (noting that "liberty of the press and of speech is within the liberty safeguarded by the due process clause of the Fourteenth Amendment from invasion by state action" for purposes of incorporation).

Here, the basis of Plaintiff's liberty interest claim is not clear from either the Amended Complaint or his motions papers.  However, Defendants' argument to support dismissal of this claim relies entirely on the argument they proffer in support of their motion to dismiss the First

Amendment claim, which the Court has already found wanting.  As a result, Plaintiff's Fourteenth Amendment liberty interest claim—amorphous as it may be—will survive the instant motion.

Therefore, Defendants' motion to dismiss Plaintiff's liberty interest claim is DENIED.

## IX. Fourteenth Amendment Equal Protection Claim

Plaintiff has also asserted an equal protection claim on the basis of his First Amendment retaliation claim.[35]  The claim is based on the allegation that Defendants "singled out plaintiff, in part, because of his exercise of constitutional rights and intentionally violated his rights under the Fifth and Fourteenth Amendments," without any further elaboration or supporting allegations. Am. Compl. ¶ 96.

Where, as here, a plaintiff does not claim to be a member of a constitutionally protected class, he may bring an Equal Protection claim pursuant to one of two theories:  (1) selective enforcement, or (2) "class of one."[36]  In order to state a viable equal protection claim on a theory of selective enforcement or selective treatment, a plaintiff must show that:  (1) "[he], compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the [plaintiff]."  *Zahra v. Town of Southold,* 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)).

---

[35] Plaintiff's equal protection claim is set forth in his Sixth Claim for Relief.  Am. Compl. ¶¶ 95-99.

[36] It is not clear from the Amended Complaint which theory Plaintiff intended to utilize.  In his opposition papers, Plaintiff cites to case law relating to both theories, but never identifies which theory he is relying on.  The Court will therefore assume that he relies on both.

In order to adequately allege an equal protection claim on a "class of one" theory, a plaintiff must demonstrate that:  (1) he was "intentionally treated differently from others similarly situated," and (2) "that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2010) (examining *Olech*).  Stated differently, a plaintiff asserting a "class of one" equal protection claim must allege that the intentional disparate treatment alleged to state the first element of the claim was "wholly arbitrary" or "irrational."  *Aliberti v. Town of Brookhaven*, --- F. Supp. 2d ----, 2012 WL 2411908, at *9 (E.D.N.Y. June 25, 2012) (citing *Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001)); *see also Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010), *cert. denied* 131 S. Ct. 2970 (2011).

Plaintiff is required to allege differential treatment from "similarly situated" individuals in order to state a viable equal protection claim under either theory.[37]  *See, e.g.*, *Ruston v. Town Bd. for the Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010) (affirming dismissal of "class of one" claim based on failure to adequately allege that comparators who were "sufficiently similar" to plaintiffs were treated more favorably); *see also Church of the Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) ("[A] showing that the plaintiff was treated differently compared to others similarly situated," is a "prerequisite" and a "threshold matter" for

---

[37] While there is disagreement within the Second Circuit regarding the degree of similarity that a plaintiff must show between himself and the comparators in order to adequately allege an equal protection claim under each theory, the Court is not required to determine which standard should be applied in this case, because Plaintiff did not identify any similarly situated individuals in the Amended Complaint.  *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693-95 (S.D.N.Y. 2011) ("*Mosdos II*") (discussing the two pleading standards for comparators and the disagreement among courts in this Circuit); *see also Gentile v. Nulty*, 769 F. Supp. 2d 573, 580-81 (S.D.N.Y. 2011) (noting the same disagreement as to the meaning of "similarly situated" in this Circuit, but declining to decide which standard to apply where plaintiff's claim would fail under any standard).

stating a viable selective treatment claim).  Because Plaintiff fails to adequately allege

differential treatment under either theory, they are discussed together.

**Discussion**

Here, Plaintiff does not allege that he was treated differently from *any* identified

individuals, let alone individuals who he claims were similarly situated to him in any respect.

Indeed, the Amended Complaint is completely devoid of any reference to "similarly situated" or

"substantially similar" individuals.  Plaintiff simply alleges that Defendants "singled out

plaintiff, in part, because of his exercise of constitutional rights," Am. Compl. ¶ 96, and argues

that "Defendants' actions clearly indicate that plaintiff has been intentionally treated differently

by defendant," Pl.'s Mem. 13, without ever explaining from whom Plaintiff believes his

treatment was allegedly different.  Such a naked assertion has been found to be patently

insufficient to survive a motion to dismiss in other cases.  *See, e.g.*, *Ruston*, 610 F.3d at 59-60

(holding that "class of one" claim could not survive motion to dismiss because allegation that

similarly situated properties were treated more favorably than plaintiffs' property was a legal

conclusion that was not entitled to the assumption of truth, and the complaint did not contain any

factual allegations to adequately support that statement); *see also Dellutri v. Vill. of Elmsford*,

No. 10 Civ. 1212 (KMK), --- F. Supp. 2d. ----, 2012 WL 4473268, at *15 (S.D.N.Y. Sept. 28,

2012) (holding that plaintiff's equal protection claims could not survive a motion to dismiss

under either theory, where complaint contained a conclusory assertion that plaintiff was treated

differently from "other similarly situated property owners," but did not include any details about

those individuals).

While a plaintiff is not required to proffer evidence of similarly situated individuals at the

motion to dismiss stage, the court "still must determine whether, based on a plaintiff's

allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos II*, 815 F. Supp. 2d at 697-98. "Thus, '[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of such a claim . . . .'" *Id.* at 698 (alteration in original) (quoting *Bishop v. Best Buy Co.*, No 08 Civ. 8427 (LBS), 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 31, 2010)); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 603-04 (S.D.N.Y. 2010) ("[M]ore than a bare allegation that other [individuals] were treated differently is required" to survive a motion to dismiss) (citations omitted). Accordingly, even assuming *arguendo* that the Amended Complaint adequately alleged the second prong of an equal protection claim under each theory (i.e. that the alleged disparate treatment was motivated by an intent to punish him for exercising his First Amendment rights, or that the alleged disparate treatment was wholly arbitrary), Plaintiff's claim would still fail because the Amended Complaint is devoid of factual allegations—or even legal conclusions—to support the first element of the claim.

Therefore, Defendants' motion to dismiss Plaintiff's Fourteenth Amendment Equal Protection claim is GRANTED.

## X. Substantive and Procedural Due Process Property Interest Claims

The Amended Complaint contains two causes of action for violations of due process that arise out of the seizure of Plaintiff's property pursuant to the March 2007 Search.[38] Am. Compl. ¶¶ 82-89, 100-05. First, Plaintiff alleges violations of his "rights to substantive and procedural due process" under the Fourteenth Amendment, based on Defendants' "failure to provide [him]

---

[38] Plaintiff's first due process property interest claim is set forth in his Fourth Claim for Relief, Am. Compl. ¶¶ 82-89; his second due process property interest claim is set forth in his Seventh Claim for Relief. *Id.* ¶¶ 100-05.

with any process subsequent to the seizure." *Id.* ¶¶ 86, 83.  Second, Plaintiff claims that Defendants intentionally violated his right to due process of law under the Fourteenth Amendment by adopting and implementing a policy of deliberately depriving him of his personal property without providing him with a remedy to recover that property.  *Id.* ¶ 101.

In opposing Defendants' motion to dismiss, Plaintiff argues that there was no basis for Defendants to continue to possess the seized items because Plaintiff was never charged with a crime.  Pl.'s Mem. 17.  Plaintiff also asserts that under New York law, Defendants were required to bring a forfeiture action pursuant to CPLR § 1311, but did not, and "[i]nstead, defendants have placed the onus on plaintiff to seek a judicial order for return of the property, despite the fact that he filed a Notice of Claim, which was ignored by defendants." [39]  Pl.'s Mem. 18.

In support of their motion to dismiss, Defendants *say* they're attacking the substantive due process claim but attack the procedural due process claims. [40]  In response, Plaintiff defends his substantive due process claim but ignores Defendants' arguments against his procedural due process claims.  The Court addresses each type of due process claim in turn below, with reference to the parties' arguments to the extent relevant and possible given the quality of their submissions.

### A.  Procedural Due Process

Defendants argue that Plaintiff's due process claim must be dismissed because:  (1) the Court does not have subject matter jurisdiction over the claims and should decline to exercise

---

[39] CPLR § 1311 appears to be limited to forfeiture actions against *criminal* defendants, as defined in the statute, to recover the proceeds, substituted proceeds, or instrumentality of certain enumerated *narcotics offenses*.  However, since Defendants failed to respond to this argument, the Court has assumed for the purpose of deciding this motion that the requirements of CPLR § 1311 would apply to the Defendants and the seizure alleged in this case.

[40] Defendants' submissions also appear to conflate and confuse Plaintiff's two due process claims; the Seventh Claim for Relief does not contain any reference to *substantive* due process.  Am. Compl. ¶¶ 100-05.

supplemental jurisdiction over them, and (2) adequate state law post-deprivation remedies

preclude Plaintiff from bringing a procedural due process claim pursuant to § 1983 because he

has not alleged a lack of state law remedies or that the remedies were futile.[41]  Defs.' Mem. 14-

15; Defs.' Reply Mem. 9-11.  The Court will begin by addressing Defendants' second argument.

### 1.  Legal Standard

When reviewing allegations of procedural due process violations, the Supreme Court has

distinguished between:  (1) claims that are based on random, unauthorized acts by state

employees such that it would be impossible for the state to provide a pre-deprivation hearing,

which are governed by the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527 (1981)

and *Hudson v. Palmer*, 468 U.S. 517 (1984);[42] and (2) claims that are based on established state

procedures, municipal polices, or actions by a high-ranking government official with final

---

[41] While Defendants also argue that Plaintiff cannot state a due process claims because a Town justice issued a
Return Order directing the OPD to hold the seized property until its release was authorized by the court, Defs.'
Mem. 14; Defs.' Reply Mem. 9, this assertion is based on facts outside of the pleadings and therefore has not been
considered by this Court in deciding the instant motion.  *See supra* note 19.

Additionally, with respect to Defendants' assertion that Plaintiff waived his right to pursue an adequate
state law remedy, assuming that such an argument is relevant to Plaintiff's § 1983 claim (which is not clear from
Defendants' submissions), such an argument would not succeed in connection with the instant motion, because
Plaintiff has alleged that he did not receive notice of the relevant state law procedures and Defendants failed to
address this allegation in their motion papers.  *See, e.g.*, *City of W. Covina v. Perkins*, 525 U.S. 234, 681 (1999) ("It
follows [from the requirement that the opportunity for a hearing be meaningful] that when law enforcement agents
seize property pursuant to a warrant, due process requires them to take reasonable steps to give notice that the
property has been taken so the owner can pursue available remedies."); *see also, e.g.*, *Kneitel v. Danchuk*, No. 04
Civ. 0971 (NGG) (LB), 2007 WL 2020183, at *6 (E.D.N.Y. July 6, 2007) ("Plaintiff was constitutionally entitled to
notice of the established procedures for recovering seized property," and court would not dismiss § 1983 claim at
summary judgment stage based on potential constructive notice provided by published regulations because, even if
such notice was constitutionally adequate, defendants had not presented that argument to the court).

[42] In *Parratt v. Taylor*, the Supreme Court held that where a deprivation is the result of "random and unauthorized"
negligent conduct by a state actor such that it would be impossible for the state to provide a pre-deprivation hearing,
due process requires only post-deprivation process.  451 U.S. at 541, 543-44, *overruled in part on other grounds by
Daniels v. Williams*, 474 U.S. 327, 330 (1986).  In *Hudson v. Palmer*, the Supreme Court held that a post-
deprivation hearing also satisfies due process where the deprivation is the result of an intentional, "random and
unauthorized" deprivation by a state actor.  468 U.S. at 534-35, 536-37.

authority over relevant matters, which are governed by *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) and *Zinermon v. Burch*, 494 U.S. 113 (1990).

Where a plaintiff asserts a procedural due process claim that falls within the purview of *Parratt* and *Hudson*, a plaintiff cannot state a valid § 1983 claim unless he alleges that state law post-deprivation remedies are unavailable or inadequate.  *See, e.g.*, *Rackley*, 186 F. Supp. 2d at 481 ("Relevant Supreme Court and Second Circuit precedents establish that the availability of adequate pre-deprivation and post-deprivation remedies under state law will defeat a § 1983 action . . . so long as the claimant had sufficient notice of such remedies.") (internal citations omitted).  However, the "random and unauthorized" exception does not apply "where the government actor in question is a high-ranking official with 'final authority over significant matters.'"  *DiBlasio v. Novello*, 344 F.3d 292, 302-03 (2d Cir. 2003) (quoting *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1985)).

In *Zinermon,* the Supreme Court clarified the meaning of "unauthorized," explaining that where a deprivation is based on the actions of a high-ranking official with authority over the activities alleged in the complaint, abuse of that authority is not considered "random and unauthorized."[43]  *See DiBlasio*, 34 F.3d at 303 (quoting *Zinermon,* 494 U.S. at 138).  Thus, such a claim will not fall under the *Parratt/Hudson* doctrine, even where the official's conduct is alleged to have violated a state law or municipal code.[44]  *See, e.g.*, *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 465-66 (2d Cir. 2006) ("the acts of high-ranking officials who are

---

[43] Although the Amended Complaint does not contain facts relating to Nulty's authority or duties with respect to procedural safeguards, the Court assumes for purposes of this motion that as the highest ranking official in the police department, Nulty was the individual responsible for initiating and/or supervising the requisite post-deprivation procedures that applied to the seizure of Plaintiff's property.

[44] For this reason, Plaintiff's argument that Defendants failed to comply with their obligations under CPLR § 1311 does not place his due process claim within the *Parratt/Hudson* category.  *See, e.g.*, *DiBlasio*, 344 F. 3d at 303 (explaining that allegation that certain actions taken by high ranking official were in excess of authority, or in violation of state law, does not render such actions "unauthorized" as that term is used in *Parratt* and *Hudson*).

'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis." (quoting *Velez*, 401 F.3d at 75, 91-92 & nn.14-15)) (alterations in original); *see also Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (explaining that *Hudson* and *Parratt* do not apply where the alleged deprivation results from adherence to an established municipal policy).

### 2. Discussion

Although the distinction between cases that fall under *Parratt/Hudson* and those that fall under *Zinermon* is not clear-cut, *Rivera-Powell*, 470 F.3d at 465, Defendants appear to assume—without any explanation or argument in support of their position—that all of the procedural due process claims asserted by Plaintiff are governed by *Parratt/Hudson*. Defs.' Mem. 14-15; Defs.' Reply Mem. 9-10. In so doing, Defendants completely ignore Plaintiff's allegations that Defendants "adopted, promulgated and implemented a policy and practice of deliberately depriving plaintiff of his personal property without providing him with a remedy to recover that property," Am. Compl. ¶ 101, and that one of the Individual Defendants—Nulty—is identified as a final policymaker for the police department with ultimate decision-making authority over the activities described in the Amended Complaint. [45]  *Id.* ¶ 9; *see also* Pl.'s Mem. 19-20.

The *Parratt/Hudson* doctrine is therefore inapplicable to this case because Plaintiff alleges that Nulty was a high-ranking official and that it was the official policy of the Town to deprive Plaintiff of his personal property without any post-seizure process. *See, e.g.*, *Sullivan v. Town of Salem*, 805 F.2d 81, 86 (2d Cir. 1986) (explaining that *Hudson* and *Parratt* are "simply

---

[45] Plaintiff's allegations regarding Nulty's authority for the purpose of stating a *Monell* claim are also relevant to Plaintiff's procedural due process claim; the Second Circuit has held that allegations sufficient to demonstrate an established state procedure for purposes of a procedural due process claim are likewise adequate to state a *Monell* claim. *Alexandre v. Cortes*, 140 F.3d 406, 412 n.9 (2d Cir. 1998).

inapposite" where plaintiff alleges a deprivation inflicted "pursuant to town policy").

Accordingly, Defendants cannot rely on the availability of post-deprivation state law remedies to

defeat Plaintiff's § 1983 procedural due process claim, *Pangburn*, 200 F.3d at 71, and

Defendants' motion to dismiss can be denied on this basis alone.

### 3. Jurisdictional Arguments

Defendants also assert two jurisdictional arguments in support of their motion to dismiss

Plaintiff's procedural due process claim, which are both based on misstatements of the relevant

law.

First, Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's

"confiscation of personal property" claim because of the existence of adequate state law post-

deprivation remedies.  However, this argument mistakes the concept of subject matter

jurisdiction with Plaintiff's ability to state a viable § 1983 claim.  *See, e.g.*, *Reed Elsevier v.*

*Muchnick*, 130 S. Ct. 1237, 1243-44 (2010) (discussing the crucial distinction between

jurisdictional prescriptions, which limit the court's adjudicatory authority, and non-jurisdictional

claim-processing rules or elements of a claim).[46]

Second, Defendants' contention that the Court should decline to exercise supplemental

jurisdiction over Plaintiff's claim is based on the misapprehension that Plaintiff's claim is based

---

[46] Defendants' reliance on *McClendon v. Rosetti*, is also misplaced, because the question of subject matter jurisdiction was only mentioned in *McClendon* in relation to the then-recent Supreme Court holding that property rights were among the "basic civil rights" covered by 28 U.S.C. § 1343(3) and § 1983.  *See* 460 F.2d 111, 112-13 (2d Cir. 1972) (citing *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 542 (1972)).  Defendants are thus incorrect in asserting that the court had subject matter jurisdiction over the claim in *McClendon* because of the particular statute that was challenged, which statute Defendants misidentify as the "Civil Rights Act."  Defs.' Mem. 14; Defs.' Reply Mem. 9.  The "Civil Rights Act" referenced in *McClendon* is 28 U.S.C. § 1343(3) and § 1983; not, as Defendants contend, a law giving "New York City police arbitrary powers over the disposition of personal property."  Defs.' Mem. 14; Defs.' Reply Mem. 9.

on state law.  Defs.' Mem. 15; Defs.' Reply Mem. 10-11.  Since the Amended Complaint does

not contain any state law claims, supplemental jurisdiction is not an issue in this case.

Therefore, Defendants' motion to dismiss Plaintiff's procedural due process claim is

DENIED.

## B.  Substantive Due Process

While the Court is skeptical as to Plaintiff's ability to meet the extremely high standard

for substantive due process claims based on the allegations in the Amended Complaint, Am.

Compl. ¶¶ 83-85, Defendants did not assert any arguments to support a dismissal of this claim,

despite the fact that Plaintiff's opposition papers *only* addressed the viability of his substantive

due process claim.  Therefore, Defendants' motion to dismiss Plaintiff's substantive due process

claims under the Fourteenth Amendment is DENIED.

## XI. *Monell* Claim against the Town

Defendants also seek to dismiss Plaintiff's claims against the Town for failure to

adequately allege a *Monell* claim.[47]

## A.  Legal Standard

A municipality cannot be held liable under § 1983 on a theory of *respondeat superior*.

*Monell*, 436 U.S. at 691.  A section 1983 claim can only be brought against a municipality if the

action that is alleged to be unconstitutional was the result of an official policy or custom.  *Id.* at

691, 694-95.  Thus, a plaintiff must allege that such a municipal policy or custom is responsible

for his injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403-04 (1997); *see

also Connick v. Thompson*, --- U.S. ----, 131 S. Ct. 1350, 1359 (2011) ("A municipality or other

---

[47] While Defendants address the *Monell* claim against the Town as an independent claim, the Court notes that
Plaintiff's *Monell* claim is simply the basis for imposing municipal liability on the Town for the constitutional
violations alleged in the Amended Complaint pursuant to §1983.

local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)).

The Second Circuit has established a two prong test for § 1983 claims brought against a municipality.  "First, a plaintiff must 'prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.'"  *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights.[48]  *Id.* (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

To satisfy the first prong of the test on a motion to dismiss, a plaintiff must allege the existence of:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom or usage and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

---

[48] Apart from a single unsupported statement that a municipality is only liable if its "official policies cause [] employees to violate someone's constitutional rights," Defs.' Mem. 16, Defendants' motion to dismiss does not contain any arguments that relate to the second prong of the claim; therefore, the Court's analysis of the adequacy of Plaintiff's *Monell* claim is limited to a consideration of allegations sufficient to demonstrate the first prong of the test.

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal citations and quotation marks omitted); *see also Brandon*, 705 F. Supp. 2d at 276-77 (quoting *Moray* and updating citations to cases).

Although a plaintiff is not required to identify an express rule or regulation to state a *Monell* claim, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y. City Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted).  However, where a plaintiff alleges that his constitutional rights were violated by a municipal official who has "final policymaking authority" with respect to the activities alleged in the complaint, the actions of that final policymaker may be adequate to subject the government to § 1983 liability.  *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) (plurality opinion); *see also Birmingham v. Ogden*, 70 F. Supp. 2d 353, 374 (S.D.N.Y. 1999) ("[T]he decisionmaker must be responsible for establishing *final government policy* respecting the particular activity [giving rise to the plaintiff's claims] before the municipality can be liable." (citing *Pembaur v. City of Cincinnati*, 475 U.S. 479, 481 (1986))).

## B.  Discussion

Plaintiff claims that during the years prior to 2007 he was "regularly" a target of harassment and intimidation by Town officials members of the OPD, and he contends that the specific events described in the Amended Complaint are all part of that pattern of harassment and intimidation.  Am. Compl. ¶ 24.  Plaintiff also alleges that Defendants implemented, and acted pursuant to, a policy and practice of depriving Plaintiff of his property without providing him with a remedy to recover the property.  *Id.* ¶ 101.  Plaintiff states that these actions and

policies also represent official policies and practices that were "approved, carried out and acquiesced in by public officers high enough in the relevant entities so that their actions may be said to represent municipal decisions." *Id.* ¶ 16; *see also id.* ¶ 24. Plaintiff alleges that Nulty, in his role as Chief of Police, "has ultimate responsibility for the enforcement of laws in the Town of Orangetown and for the conduct and actions of subordinate police officers," that he "was instrumental in the adoption, promulgation and implementation of the actions challenged" in the Amended Complaint, and that he "authorized, condoned and/or ratified the unlawful actions" set forth in the Amended Complaint. *Id.* ¶ 9; *see also* Pl.'s Mem. 19-20. Thus, Plaintiff alleges that Nulty is the type of final policymaker whose conduct has been held adequate to establish municipal liability under *Pembaur v. City of Cincinnati*. Am. Compl. ¶ 9; Pl.'s Mem. 19-20.

Defendants do not dispute Plaintiff's characterization of Nulty as a decisionmaker with final unreviewable authority for the police department, nor do they offer any meritorious arguments for why his conduct should not be deemed sufficient to subject the Town to liability at this stage of the proceedings.[49] The only argument contained in Defendants' Reply brief that actually responds to Plaintiff's arguments is an unsupported assertion that a *Monell* claim cannot be based on a single instance of unconstitutional conduct by a municipal official. Defs.' Reply Mem. 11. In addition to being unsupported, this assertion is also incorrect—both in terms of the scope of the conduct upon which Plaintiff's *Monell* claim is based, and because, under the Supreme Court's holding in *Pembaur*, a single decision to adopt a particular course of action that is made by an authorized decisionmaker "represents an act of official government 'policy' as that term is commonly understood." *Pembaur*, 475 U.S. at 481 ("[W]here action is directed by those

---

[49] While Plaintiff will ultimately be required to establish that Nulty is final policymaker as a matter of state law, *see Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000), the allegations in the Amended Complaint, which also include the "policy and practice" alleged in the Seventh Claim for Relief, Am. Compl. ¶ 101, are adequate to survive the instant motion to dismiss.

who establish government policy, the municipality is equally liable whether that action is to be taken only once or to be taken repeatedly.").

The other arguments contained in Defendants' motion papers regarding Plaintiff's *Monell* claim are either based on facts not contained in the pleadings, or are conclusory and unsupported assertions that the events alleged in the Amended Complaint as part of the overall pattern of harassment and intimidation do not support the conclusion that such a pattern existed.  Defs.' Mem. 16-18.

Therefore, Defendants' motion to dismiss Plaintiff's *Monell* claim against the Town is DENIED.

## XII. Conclusion

For the reasons set forth above,

    (1) Plaintiff's Motion to Compel is DENIED,

    (2) Plaintiff's request for an extension of time to complete service is DENIED,

    (3) Plaintiff's claims against Hoffman, Nawoichyk and Sullivan are DISMISSED,

    (4) Plaintiff's claims against the Orangetown Police Department are DISMISSED,

    (5) Plaintiff's Second Amendment Claim (Second Claim for Relief) is DISMISSED,

    (6) Plaintiff's Fourteenth Amendment Equal Protection Claim (Sixth Claim for Relief) is DISMISSED,

    (7) Plaintiff's Fifth Amendment Claims (set forth in his Fourth, Fifth, Sixth and Seventh Claims for Relief) are DISMISSED,

    (8) Defendants' Motion to Dismiss Plaintiff's First Amendment Claim (Third Claim for Relief) is DENIED,

(9) Defendants' Motion to Dismiss Plaintiff's Fourth Amendment Claim (First Claim

for Relief) is DENIED, and

(10) Defendants' Motion to Dismiss the balance of Plaintiff's Fourteenth Amendment

Claims (set forth in his Fourth, Fifth and Seventh Claims for Relief) is DENIED.

The Clerk of the Court is respectfully directed to terminate Hoffman, Nawoichyk,

Sullivan and the Orangetown Police Department as defendants in this case, and to terminate the

pending motions.  Docs. 28, 33.


It is SO ORDERED.


Dated:     January 2, 2013
           White Plains, New York


                                                    Edgardo Ramos, U.S.D.J.